Filed 1/12/16  Rosales v. State of California, Dept. of Transportation CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| WALTER ROSALES et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>STATE OF CALIFORNIA, DEPARTMENT OF TRANSPORTATION,<br><br>    Defendant and Respondent. | D066585<br><br><br><br>(Super. Ct. No. 37-2014-00010222-CU-PO-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Ronald S. Prager, Judge.  Affirmed.

Webb & Carey and Patrick D. Webb for Plaintiffs and Appellants.

Jeanne E. Scherer-Kluge, Lauren A. Machado, Ardine N. Zazzeron, Brandon S. Walker and Elizabeth R. Pollock for Defendant and Respondent.

I.

INTRODUCTION

Plaintiffs Walter Rosales and Karen Toggery, acting on behalf of themselves and the Estates of Helen Cuerro, Walter Rosales's Unnamed Brother, Marie Toggery, and Matthew Toggery (appellants) are Native Americans who have brought suit against the State of California's Department of Transportation (Caltrans) for claims related to the alleged mistreatment of human remains and funerary objects purportedly contained in soil that was removed from a parcel of land and deposited at the location of a Caltrans construction project.[1] Who controls and has the right to the parcel of land from which the soil was removed is the subject of a long-standing and contentious dispute between appellants and the leadership of the Jamul Indian Village (the JIV or Tribe). The Tribe contends that the land from which the soil and its contents were removed is tribal land, held in trust by the United States for the benefit of the Tribe. Appellants contend that the property is a privately owned parcel of land on which the remains of their family members were dispersed. Appellants assert that in obtaining soil from that land and depositing the soil at the site of its infrastructure project, Caltrans has played a role in

---

[1] The Plaintiffs attempt to include multiple additional individual defendants as parties to this appeal. However, for the reasons we discuss in part III.B.2.c., *post*, we reject the plaintiffs' contention that there are any other named defendants in this action and/or parties to this appeal.

unlawfully desecrating their families' remains and funerary objects.

In fact, appellants have been in a decades-long dispute with members of the JIV for control and management of the Tribe and its land. The dispute between Rosales and Toggery and the Tribe has involved seemingly endless litigation, with commensurate negative results for appellants. Yet, appellants remain undeterred.

Appellants' current action against Caltrans appears to be simply the latest assault on the actions of the JIV. Although appellants maintain that their claims are against Caltrans, it is clear from the voluminous filings by appellants in this appeal and the arguments that they present on appeal that this action is but yet another attempt to derail the JIV as part of the long-standing dispute between appellants and the leadership of the JIV that has led to litigation in a variety of forms for more than 20 years.

The trial court dismissed the action on a number of grounds, including that an Indian tribe is an indispensable party, and may not be sued because of its sovereign immunity.

On appeal, appellants challenge all of the grounds that form the basis of the trial court's ruling dismissing the action. We conclude that the trial court did not abuse its discretion in determining that the action must be dismissed on the ground that the Tribe is an indispensable party that may not be named because it is entitled to sovereign

immunity. In view of this conclusion, we need not address appellants' other contentions. We therefore affirm the judgment in favor of Caltrans.

II.

FACTUAL AND PROCEDURAL BACKGROUND

A.      *A brief history regarding appellants and their disputes pertaining to control over the JIV and its land*

For more than two decades, Rosales and Toggery, represented by the same attorney who is representing them in this action, have initiated challenges to the JIV's sovereignty and its construction of a casino on its lands.[2]

In order to provide some context regarding the origins and history of this lengthy dispute, we provide the following brief summary, taken from a 2007 federal district court decision in *Rosales v. United States* (S.D.Cal., Nov. 28, 2007, case No. 07cv0624) 2007 WL 4233060, *2:

---

[2]      See, e.g., *Rosales v. Sacramento Area Dir., Bureau of Indian Affairs* (1998) 32 IBIA 158; *Rosales v. Sacramento Area Dir., Bureau of Indian Affairs* (1999) 34 IBIA 50; *Rosales v. United States* (Fed.Cl. 2009) 89 Fed.Cl. 565; *Rosales v. Sacramento Area Dir., Bureau of Indian Affairs* (1999) 34 IBIA 125; *Rosales v. Pacific Regional Dir., Bureau of Indian Affairs* (2003) 39 IBIA 12; *Rosales v. United States* (D.C.Dist. 2007) 477 F.Supp.2d 119; *Rosales v. United States* (S.D.Cal., Nov. 28, 2007, No. 07cv0624) 2007 WL 4233060.

"This case arises from a dispute over the leadership of the Tribe[3] which has involved federal, state and tribal courts for more than ten years. In 1994, plaintiffs attempted a recall election of tribal leadership. *Rosales v. United States*, 477 F.Supp.2d 119, 122-23 (D.D.C. 2007). Since that time, two factions—one represented by plaintiffs and the other constituting the *amicus* Tribe—have asserted control over the government of the Tribe. Id. at 123. Plaintiffs contend the Bureau of Indian Affairs ('BIA') improperly recognized the opposing faction's leadership. [Citation.] Plaintiffs appealed the BIA's decision to the District Court for the District of Columbia in Rosales v. United States, No. 03-cv-117. The Honorable Gladys Kessler granted summary judgment against plaintiffs in that action on March 8, 2007. The court found plaintiffs are not authorized to represent the Tribe. Rosales, 477 F.Supp.2d at 122, n. 1. The court further held the BIA did not act improperly in upholding the opposing faction's elections against plaintiffs' challenges. Id. at 126-30. . . .[4]

"Plaintiffs were previously before this Court over a dispute with the Tribe in Rosales v. United States, No. 01-cv-591. In that case, plaintiffs sought . . . 'a declaration of their entitlement' to a parcel of land then called 597-080-01 but now referred to as Parcel 04. [Citation.] The Court granted summary judgment in favor of defendants on February 14, 2002, holding Parcel 04 was conveyed to

---

3     In this federal court case, Rosales and Toggery attempted to bring suit on behalf of the JIV as an additional plaintiff, along with themselves. The district court noted, "While the complaint names the Jamul Indian Village, a federally-recognized Indian tribe, as a plaintiff, the Tribe filed an *amicus* brief asserting plaintiffs do not have the authority to bring this action on its behalf. [Citation.] For clarity and consistency with the decisions of other federal courts regarding these parties, the *amicus* Jamul Indian Village will be referred to as the Tribe. All other plaintiffs will be referred to as 'plaintiffs.' " (*Rosales v. United States*, *supra*, 2007 WL 4233060, at *1.) The district court further explained that "[t]he District Court for the District of Columbia has twice held plaintiffs lack authority to bring suit on behalf of the Tribe. *Rosales v. United States*, 477 F.Supp.2d 119, 122 n. 1 (D.D.C. 2007); *Rosales v. United States*, 477 F.Supp.2d 213, 214 n. 1 (D.D.C. 2007)." (*Id.* at *1, fn. 1.)

4     In *Rosales v. United States* (D.C.Cir. March 27, 2008) 275 Fed.Appx. 1, the District of Columbia Circuit Court of Appeal affirmed the district court's summary judgment order referred to in the above quotation.

the United States in trust for the Tribe, not for the individual plaintiffs. [Citation.]

"Plaintiffs appealed and the Ninth Circuit Court of Appeals affirmed on the basis that the Jamul Indian Village was a necessary and indispensable party pursuant to Rule 19 of the Federal Rules of Civil Procedure. Rosales v. United States, 73 F.App'x. 913, 914 (9th Cir.2003). Plaintiffs have also filed cases in other forums related to their challenges to the Tribe's leadership."

B.    *The soil at issue and Caltrans's involvement*

Appellants dispute the JIV's authority to control certain parcels of land held in trust by the United States for the benefit of the JIV. Appellants allege (1) that the cremated remains of Appellant Rosales's mother and son were scattered throughout the property in dispute, (2) that the remains of Appellant Rosales's unnamed brother were buried somewhere on the disputed property, (3) that there are cremated funerary items associated with these three individuals in the soil that was on the property in dispute, and (4) that there were cremated items associated with Appellant Toggery's mother and son in the soil on the disputed property.

Over many years, appellants have challenged the JIV's grading, excavation, and construction activities on the property. For example, in *Rosales v. United States*, *supra*, 2007 WL 4233060, at *2, Rosales and Toggery sought federal court assistance to "stop construction activities on three pieces of land known as Parcels 04, 05, and 06." In that case, appellants "allege[d] they know human remains and associated items are located on those parcels" and further "allege[d] 'grading, excavation, demolition, operation of heavy equipment, moving dirt and/or gravel, and other construction activities' [were] occurring

6

on the land, 'thereby mutilating, disinterring, removing, excavating, and otherwise disturbing the Native Americans [sic] human remains' and associated items." (*Ibid.*)

In 2007, appellants filed an action (*Rosales v. State of California* (Super. Ct. San Diego County, 2007, No. GIC 878709) (*Rosales I*)) against the State of California, the Native American Heritage Commission, and the Water Resources Control Board, alleging that the JIV would soon begin building its gaming facility and seeking to prevent further grading activity on the property that appellants dispute is held in trust by the JIV.[5]

In 2011, the JIV built a community center on the property, which required additional grading and soil disruption.

The JIV began constructing its gaming facility in 2014. The project included the excavation of soil for a large underground parking structure. Prior to the commencement of construction, some of the top soil was relocated to a different location on the JIV's property.

In February 2014, the JIV hauled some of the excavated material off of its property and delivered it to three different locations. Some of the material was delivered to Coffman Specialties, Inc. (Coffman), one of Caltrans's contractors on a major infrastructure construction project involving State Route 11 and the Otay Mesa East Port of Entry Project (the Caltrans Project).

---

5     The trial court in *Rosales I* dismissed the action, finding that the JIV was an indispensable party because the relief sought by Rosales and Toggery would affect the JIV's use of its tribal land, and California courts do not have jurisdiction over disputes between a tribe and its members.

7

While working on the Caltrans project, Coffman distributed throughout the Caltrans Project construction site borrow material[6] that it had obtained from at least two different sites, including a location in downtown San Diego, and the land claimed by the JIV as tribal land.

Approximately three weeks after Coffman began receiving borrow material from the JIV's property, appellants filed a government claim against Caltrans, seeking $2 million in damages for the alleged desecration of human remains and funerary objects. Appellants were informed that the Victim Compensation and Government Claims Board intended to deny their claim at an April 17, 2014 meeting.

C.      *Procedural background in this action*

Appellants filed this lawsuit against Caltrans on April 7, 2014. The complaint sets forth two causes of action, titled "Tortious Violation of Statute and Negligence Against All Defendants" and "Declaratory and Injunctive Relief." Essentially, appellants assert a property interest in the soil that was excavated from the JIV's property and transferred to the site of the Caltrans Project. In the complaint, appellants make various allegations as to the ownership of the land in question, disputing that the JIV possesses any right to the land, and asserting that the land "has always been privately owned," and assuming that "[t]he State of California has never ceded jurisdiction" over it, and that the United States never acquired jurisdiction over the land in question, such that "California retains State and local police power over" it.

---

6      "Borrow" material is soil or other materials obtained from one location and incorporated into a project's earthworks at a different location.

Appellants sought a preliminary injunction from the trial court. The court set a briefing schedule and hearing date for appellants' motion for a preliminary injunction. During the pendency of the motion for a preliminary injunction, Caltrans filed an answer to the complaint, asserting that "certain indispensable parties have not been made parties to this litigation." Also during this period, the JIV sought leave to file an amicus curiae brief in the trial court. The trial court apparently granted the JIV leave to file a brief as amicus curiae, since the record on appeal includes an amicus curiae brief filed on behalf of the JIV.

The trial court held a hearing on appellants' motion for a preliminary injunction in June 2014. After hearing from the parties, the trial court made several evidentiary rulings, denied the motion for a preliminary injunction, and determined that the case should be dismissed, based on a number of grounds. The trial court concluded (1) that it lacked subject matter jurisdiction over the matter because the JIV is an indispensable party and cannot be joined because it has sovereign immunity, (2) that the action is barred by principles of res judicata because appellants sought this same type of injunctive relief in *Rosales I*, (3) that appellants lacked standing to bring their claims under chapter 1.75 of the Public Resources Code, and (4) that appellants' challenges to Caltrans's actions based on CEQA are barred by the statute of limitations.

The trial court entered judgment in favor of Caltrans, dismissing the action with prejudice, on July 10, 2014. Appellants filed a timely notice of appeal.

9

After the parties briefed the issues on appeal, the JIV requested permission to file an amicus curiae brief in this court. Over appellants' objection, we permitted the JIV to file its amicus curiae brief.

III.

DISCUSSION

A.     *Caltrans's motion to strike portions of the Appellants' Appendix*

We first address Caltrans's motion to strike certain documents from the Appellants' Appendix on the ground that these documents (a) are not contained in the trial court's file, and/or (b) are unnecessary to proper consideration of the issues on appeal.[7]  As Caltrans notes, the vast majority of the documents that it seeks to strike from the record on appeal are either exhibits to a request for judicial notice that appellants filed in the trial court, or are declarations that appellants proffered in the trial court. One of the documents that does not fall into one of these categories is an application to amend the complaint filed by appellants in the trial court on June 5, 2014.

California Rules of Court, rule 8.124(b)(4) provides that "[a]ll exhibits admitted in evidence, refused, or lodged are deemed part of the record, whether or not the appendix contains copies of them." California Rules of Court, rule 8.124(b)(3) states, however, that an appellate appendix "must not:  [¶]  (A) Contain documents or portions of

---

[7]     Specifically, Caltrans seeks to strike from the Appellants' Appendix the documents contained in tabs 12 through 24 (pp. 223-262), tabs 26 through 29 (pp. 266-295.94), tabs 31 through 36 (pp. 295.97-319), tabs 56 through 59 (pp. 572-602), tab 61 (pp. 605-620), tab 63 (pp. 621-629), tab 65 (pp. 655-677), tabs 68 through 71 (pp. 713-742), tab 72 (pp. 743-749), and tab 73 (pp. 750-750b).

10

documents filed in superior court that are *unnecessary for proper consideration of the issues*." (Italics added.)

1. *The exhibits to appellants' requests for judicial notice related to their motion for a preliminary injunction and reply papers*

Caltrans seeks to strike from the Appellants' Appendix the documents that the trial court rejected when it denied appellants' request for judicial notice of the documents— i.e., the documents contained in tabs 12 through 24 (pp. 223-262), tabs 26 through 29 (pp. 266-295.94), tabs 31 through 36 (pp. 295.97-319), tab 61 (pp. 605-620), tab 63 (pp. 621-629), tab 65 (pp. 655-677), and tabs 68 through 71 (pp. 713-742).

In the trial court, Caltrans objected to appellants' request for judicial notice of certain documents in support of appellants' motion for a preliminary injunction, as well as appellants' request for judicial notice of additional documents filed with appellants' reply papers. The record demonstrates that the trial court denied appellants' requests for judicial notice as to all of the documents that Caltrans seeks to strike from the appellate record.

Pursuant to California Rules of Court, rule 8.124(b)(4), these exhibits, although refused by the trial court, may technically be "deemed part of the record" on appeal. However, appellants make no argument on appeal that the trial court's denial of their requests for judicial notice of these documents was erroneous, and these documents are not relevant to the issues raised on appeal. We therefore conclude that pursuant to California Rules of Court, rule 8.124(b)(3)(A), these documents should not have been included in the Appellants' Appendix. We grant Caltrans's motion to strike the

11

documents contained in tabs 12 through 24 (pp. 223-262), tabs 26 through 29 (pp. 266-295.94), tabs 31 through 36 (pp. 295.97-319), tab 61 (pp. 605-620), tab 63 (pp. 621-629), tab 65 (pp. 655-677), and tabs 68 through 71 (pp. 713-742).

2.      *The declarations filed by appellants in the trial court*

Caltrans seeks to strike from the Appellants' Appendix the documents contained in tabs 56 through 59 (pp. 572-602) and tab 72 (pp. 743-749), which are declarations that appellants attempted to submit with their reply papers in support of their motion for a preliminary injunction.[8]

Caltrans objected to and moved to strike these declarations in the trial court.  The record demonstrates that the trial court sustained Caltrans's objections.  As a result, the trial court did not consider these declarations.

On appeal, appellants make no argument that the trial court erred in sustaining Caltrans's objections to these declarations.  Given that the declarations were not considered by the trial court, and appellants do not challenge the fact that the trial court declined to admit the declarations, it would not be proper for us to consider the declarations in this appeal.  We therefore conclude that pursuant to California Rules of Court, rule 8.124(b)(3)(A), these documents should not have been included in the Appellants' Appendix.  We grant Caltrans's motion to strike the documents contained in tabs 56 through 59 (pp. 572-602) and tab 72 (pp. 743-749).

---

[8]      The declarations include the Reply Declaration of Patrick D. Webb, the Reply Declaration of Christopher Dore, the Reply Declaration of Walter Rosales, the Reply Declaration of Karen Toggery, and the Supplemental Declaration of Patrick D. Webb.

3. *Appellants' application to amend the complaint filed on June 5, 2014*

Caltrans also seeks to strike the document contained in tab 73 (pp. 750-750b) of the Appellants' Appendix. That document is an application that appellants filed in the trial court seeking to amend the complaint to name as defendants individuals who were, at some unspecified time, members of the executive council of the JIV.

Caltrans contends that the trial court did not issue an order permitting appellants to amend to name these individual defendants, and that therefore, "the trial court did not consider the application or its effects when the court made its ruling to dismiss the matter." Caltrans further contends that this application is "unnecessary for proper consideration of the issues" in this appeal.

We conclude that this document *is* necessary for proper consideration of the issues raised in this appeal. In briefing on appeal and in response to the filing of an amicus brief by the JIV, appellants repeatedly contend that these individuals are named defendants in this action, and they base arguments concerning the validity of the trial court's decision to dismiss the action on their assertion that these individuals have been named as defendants in the action. We have determined that this document is relevant to our consideration of questions raised by this appeal, and therefore decline to strike from the record the document contained in tab 73 of the Appellants' Appendix.

B.    *The trial court correctly determined that it had no jurisdiction over the action because the JIV is an indispensible party and it cannot be joined because it enjoys sovereign immunity*

1.    *Standards regarding an indispensible party*

Code of Civil Procedure section 389 (section 389) sets forth the rules governing the joinder of parties and indispensible parties. As relevant to this appeal, subdivisions (a) and (b) of section 389 currently provide as follows:

> "(a) A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party.

> "(b) If a person as described in paragraph (1) or (2) of subdivision (a) cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed without prejudice, the absent person being thus regarded as indispensable. The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder."

Section 389 was substantially revised in 1971, and the revision substituted "practically in its entirety Rule 19 of the Federal Rules of Civil Procedure" for the former section. (Cal. Law Revision Com. com., 14 West's Ann. Code Civ. Proc. (2004 ed.) foll.

14

§ 389, p. 418; see also *Copley v. Copley* (1981) 126 Cal.App.3d 248, 296 ["As revised, [section 389] conforms substantially to rule 19 of the Federal Rules of Civil Procedure and the cases relating to the federal rule are relevant."]; *People ex rel. Lungren v. Community Redevelopment Agency* (1997) 56 Cal.App.4th 868, 885 (*Lungren*) [federal decisions interpreting and applying Federal Rule 19 are persuasive authority with respect to the application of section 389].)  "Section 389 formerly attempted not only to avoid prejudice to the parties or absent person but also to promote the general convenience of the courts by preventing a multiplicity of suits.  As revised, Section 389 takes a different approach; it limits compulsory joinder to those situations where the absence of a person may result in substantial prejudice to that person or to the parties already before the court."  (Cal. Law Revision Com. com., 14 West's Ann. Code Civ. Proc., *supra*, foll. § 389, p. 419.)

Under the statute, "[i]t is for reasons of equity and convenience . . . that the court should not proceed with a case where it determines that an 'indispensable party' is absent and cannot be joined."  (*Kraus v. Willow Park Public Golf Course* (1977) 73 Cal.App.3d 354, 364; see also *Inland Counties Regional Center, Inc. v. Office of Administrative Hearings* (1987) 193 Cal.App.3d 700, 706.)

"We review the trial court's determination that a party is or is not an indispensable party for abuse of discretion.  [Citation.]  'The abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review.  The trial court's findings of fact are reviewed for substantial evidence, its conclusions of law are reviewed de novo, and its application of the law to

the facts is reversible only if arbitrary and capricious.' " (*Verizon California Inc. v. Board of Equalization* (2014) 230 Cal.App.4th 666, 680.) "[A]n abuse of discretion standard is appropriate in reviewing a determination of indispensable parties because the determination is ' "based on fact-specific considerations. [Citation.] These determinations are anything but pure legal conclusions. . . . [T]hey involve the balancing of competing interests and must be steeped in 'pragmatic considerations.' " [Citation.] The latitude inherent in subdivision (b) renders the determination "more in the arena of a factual determination than a legal one." [Citation.] "The rule calls for a pragmatic decision based on practical considerations in the context of a particular litigation. . . . [T]he [trial] court has 'substantial discretion in considering which factors to weigh and how heavily to emphasize certain considerations in deciding whether the action should go forward.' " [Citation.] The trial judge, who is " 'closer to the arena,' " is usually better situated than an appellate panel " 'to survey the practicalities involved in the litigation.' " ' " (*Ibid.*)

2. *Application of section 389 to the present case*

The trial court determined that "the tribe is an indispensable party but cannot be joined because of sovereign immunity." Implicit in the court's ruling is the determination that the JIV has been recognized by the federal government as an Indian tribe that is entitled to sovereign immunity, as well as its conclusion that the JIV is an indispensable party, whose absence from the litigation renders it impossible for the court to effectuate justice between the named parties. We conclude that the trial court properly determined, based on federal authorities, that the JIV has been federally recognized as a tribe, and

16

further conclude that the trial court did not abuse its discretion in determining that the JIV is an indispensable party that has not been, and may not be, joined, and that therefore the action against Caltrans must be dismissed.

a.   *The trial court properly determined that the JIV is a federally recognized tribe*

The trial court implicitly concluded that the JIV has been recognized by the federal government to be an Indian tribe that is entitled to sovereign immunity. Despite this determination, appellants repeatedly assert, in various ways and in a multitude of documents filed with respect to the current appeal, that the JIV is not a federally recognized tribe under the Indian Reorganization Act, and that it is therefore not entitled to sovereign immunity.[9] There are abundant reasons for this court to affirm the trial court's conclusions that the JIV is a federally recognized tribe that may not be sued in a California court because it is entitled to sovereign immunity.

First, and most significantly, the Department of the Interior includes the JIV on its list of federally designated tribes. (See 79 Fed.Reg. 4748-02, 4750 (Jan. 29, 2014).) "Labeling an Indian tribe as federally recognized is a function of the executive branch." (*Agua Caliente Band of Cahuilla Indians v. Superior Court* (2006) 40 Cal.4th 239, 243, fn. 1 (*Agua Caliente*).) Congress, in turn, has mandated that the executive branch publish

---

[9]   Although appellants repeatedly assert that the JIV is not a federally recognized tribe entitled to sovereign immunity, they do not actually challenge the trial court's implicit factual finding in this regard. For example, appellants do not make the argument that the trial court's finding is not supported by substantial evidence, or that the court made a legal error with respect to this determination. Rather, they appear to be attempting to reargue the question of the JIV's tribal status de novo on appeal.

17

an official list of all federally recognized tribes in the Federal Register. (25 U.S.C § 479a-1.) "Appearance on the list grants the tribes immunities and privileges, *including immunity from unconsented suit*, by virtue of their relationship with the United States. (67 Fed.Reg. 46, 328 (July 12, 2002).)" (*Agua Caliente*, *supra*, at p. 243, fn.1, italics added.)[10] The Department of the Interior is required by statute to annually update the list of federally recognized tribes. (25 U.S.C. § 479a-1(b).)

The Department of the Interior's list includes the "Jamul Indian Village" as a tribal entity that is recognized by the United States government. (79 Fed.Reg. 4748-02, 4750 (Jan. 29, 2014).) This list states that the JIV and the other listed entities are entitled to all of the "immunities and privileges available to federally recognized Indian tribes." (*Id.* at

---

[10] The "Department of Interior has assumed much of the responsibility for determining which tribes have met the requirements to be acknowledged as a tribe with a government-to-government relationship with the United States." (*Kahawaiolaa v. Norton* (9th Cir. 2004) 386 F.3d 1271, 1274.) "The Department of Interior applies its expertise to [the determination whether an applying tribe can meet an extensive list of mandatory criteria] and has established the Branch of Acknowledgment and Research which staffs historians and anthropologists to determine whether groups seeking recognition 'actually constitute Indian tribes and presumably to determine which tribes have previously obtained federal recognition.' *James v. United States Dep't of Health and Human Servs.*, 263 U.S.App.D.C. 152, 824 F.2d 1132, 1138 (D.C. Cir. 1987) (citing 25 C.F.R. § 83.6(b)); *see also* 25 C.F.R. § 83.11(e)(8)." (*Kahawaiolaa v. Norton*, *supra*, at p. 1274.)

"In 1994, Congress enacted the Federally Recognized Indian Tribe List Act ('List Act'), Pub.L. No. 103-454, 108 Stat. 4791 (1994), which requires the Secretary of the Interior to keep a list of all federally recognized tribes, which 'should reflect all of the federally recognized Indian tribes in the United States which are eligible for the special programs and services provided by the United States to Indians because of their status as Indians.' Pub.L. No. 103-454, § 103. That statute, codified as 25 U.S.C. § 479a, defines the term 'tribe' as 'any Indian or Alaska Native tribe, band, nation, pueblo, village or community that the Secretary of the Interior acknowledges to exist as an Indian tribe.' 25 U.S.C. § 479a(2)." (*David Laughing Horse Robinson v. Salazar* (E.D.Cal. 2012) 838 F.Supp.2d 1006, 1044.)

p. 4749.)  This, alone, is sufficient to support the trial court's conclusion that the JIV has been federally recognized as a tribe and on that ground is entitled to sovereign immunity, given that "[i]nclusion of a tribe on the Federal Register list of recognized tribes is generally sufficient to establish entitlement to sovereign immunity."  (*Larimer v. Konocti Vista Casino Resort, Marina & RV Park* (N.D.Cal. 2011) 814 F.Supp.2d 952, 955, citing *Ingrassia v. Chicken Ranch Bingo & Casino* (E.D.Cal. 2009) 676 F.Supp.2d 953, 957.)

However, even beyond the JIV being on the Department of the Interior's list of federally recognized tribes, which presumptively establishes that the JIV is entitled to sovereign immunity, in a 2007 action against the State of California, the Native American Heritage Commission, and the Water Resources Control Board, appellants Rosales and Toggery, themselves, alleged that the JIV "*is a tribal governmental entity of Kumeyaay Indians, recognized by the United States' Congress, governed by a Constitution adopted on May 9, 1981, pursuant to the Indian Reorganization Act of 1934*, 25 U.S.C. 461 et seq."  (Italics added.)  Although this allegation in appellants' pleading in the prior case does not constitute a binding and conclusive judicial admission (4 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 453, p. 586 ["[a] judicial admission is effective (i.e., conclusive) only in the particular case"]; *Betts v. City National Bank* (2007) 156 Cal.App.4th 222, 235 [admission in proposed probate pleading not binding because pleading was not filed in current case]), the statement may nevertheless properly be considered in this case as an evidentiary admission or prior inconsistent statement (*Magnolia Square Homeowners Assn. v. Safeco Ins. Co.* (1990) 221 Cal.App.3d 1049, 1061; *Dolinar v. Pedone* (1944) 63 Cal.App.2d 169, 176 (*Dolinar*); *Jones v. Tierney-*

19

*Sinclair* (1945) 71 Cal.App.2d 366, 373). Such an admission may be used against the pleader "in a proceeding subsequent to the one in which the pleading is filed," and may be used "on behalf of a stranger to the former action." (*Dolinar*, *supra*, at p. 176.) Appellants' prior admission that the JIV is a federally recognized tribe is thus further evidence supporting the trial court's determination that the JIV is a tribe entitled to sovereign immunity.

Further, a number of tribunals have affirmed the conclusion that the JIV is a federally recognized tribe entitled to sovereign immunity in the face of litigation brought by Rosales and Toggery. (See, e.g., *Rosales v. United States* (D.D.C. 2007) 477 F.Supp.2d 119, 122; *Rosales v. United States* (Fed.Cl. 2009) 89 Fed. Cl. 565, 574; *Rosales v. Sacramento Area Dir., Bureau of Indian Affairs*, *supra*, 32 IBIA 158, 159-160.[11])

---

[11] For example, the administrative law judge in *Rosales v. Sacramento Area Dir., Bureau of Indian Affairs*, *supra*, at page 166, explained that even if there had been questions about the JIV's entitlement to its status as a federally recognized tribe, in 1994 Congress effectively eliminated any possibility of Department of Interior eliminating the JIV's status as a tribe, explaining:

> "In passing [The Federally Recognized Indian Tribe List Act of 1994, Pub.L. No. 103-454], Congress made it emphatically clear that the Department lacks authority to withdraw recognition of an Indian tribe, and that only Congress has such authority. See H.R. Rep. No. 781, 103rd Cong., 2nd Sess. 2-4, reprinted in 1994 U.S.C.C.A.N. 3768-3770. Therefore, unless at some time Congress acts to 'derecognize' the Village, the Village is a Federally recognized Indian tribe which, under new subsections (f) and (g) of 25 U.S.C. § 476, has all of the same rights and authorities as every other recognized Indian tribe, including the right to define its own membership."

Given all of the above, appellants' repeated contentions that the JIV is not a federally recognized Indian tribe and that it is therefore not entitled to sovereign immunity border on being frivolous.

> b. *Appellants' attack on the status of the Tribe, as well as the status of the land from which the relevant soil was removed, demonstrates that this case implicates issues fundamental to tribal rights and tribal land; the trial court therefore did not abuse its discretion in concluding that the JIV is an indispensable party*

> > i. *The trial court appropriately determined that the JIV is a necessary party under subdivision (a) of section 389*

Subdivision (a) of section 389, which identifies whether a party is a *necessary* party to an action, "mandates that, '[w]henever feasible, the persons materially interested in the subject of an action . . . should be joined as parties so that they may be heard and a complete disposition made.' " (*Countrywide Home Loans, Inc. v. Superior Court* (1999) 69 Cal.App.4th 785, 793, quoting Cal. Law Revision Com. com., 14 West's Ann. Code Civ. Proc. (1973 ed.) foll. § 389, p. 223.) Subdivision (a) of section 389 contains three clauses: " 'Clause (1) stresses the desirability of joining those persons in whose absence the court would be obliged to grant partial or "hollow" rather than complete relief to the parties before the court. The interests that are being furthered here are not only those of the parties, but also that of the public in avoiding repeated lawsuits on the same essential subject matter. Clause (2)(i) recognizes the importance of protecting the person whose joinder is in question against the practical prejudice to him which may arise through a disposition of the action in his absence. Clause (2)(ii) recognizes the need for considering whether a party may be left, after the adjudication, in a position where a

21

person not joined can subject him to a double or otherwise inconsistent liability.' " (*Countrywide Home Loans, Inc. v. Superior Court*, *supra*, at pp. 792-793, quoting Cal. Law Revision Com. com., 14 West's Ann. Code Civ. Proc. (1973 ed.) foll. § 389, p. 224.)

It is clear that the JIV could encounter significant prejudice to its interests if the court were to attempt to reach a disposition of the action in its absence. As the trial court noted, this case raises "issues implicating core tribal concerns." The trial court explained, "Indian trust lands are a Federal instrumentality held to effect the Federal policy of Indian advancement and therefore may not be burdened or interfered with by the State." The court determined that "[a]t its core, this is a dispute about tribal lands and the question of whether specified conduct was or was not in keeping with tribal customs is a matter within the sole discretion of the tribe."

The trial court's assessment is borne out by the papers filed in this case. For example, in their complaint in this matter, appellants allege that the property in question is "privately owned," and that it is "within the jurisdiction of the State of California today, and California retains State and local police power over [it.]" Appellants specifically allege that the JIV *does not have any tribal interest in the land from which the soil at issue in this case was removed*.[12] These assertions clearly implicate the JIV's interest in the land. Further, throughout their briefing, and in response to the JIV's filing

---

[12] As we believe we have amply demonstrated, appellants' contentions regarding the status of the JIV are entirely without merit. Appellants have been repeatedly informed by various tribunals that their position with respect to the tribal status of the JIV is incorrect. Under these circumstances, appellants' contention in this case that the JIV is not a federally recognized tribe is untenable.

22

of an amicus curiae brief, appellants repeatedly insist that the JIV is not, and never has been, a federally recognized Indian Tribe. On these grounds, appellants contend that the JIV has "no standing" to participate in this case and argue that the JIV has no sovereign immunity. These contentions also inherently implicate the JIV's interests.

Appellants contend that they are the rightful owners of their ancestor's "remains" that they claim were deposited on the property, unlawfully removed from that property and moved to the Caltrans Project site. These claims are dependent on the property in question not being tribal property and the JIV not having a superior right to control over the soil and any objects contained in the soil. In fact, appellants assert that they "own the rights in their families' human remains and funerary objects, as next of kin; which rights are superior to any the JIV may assert." However, appellants' contentions can be true only if the property in question is not tribal land and is, instead, subject to California state law.

It is readily apparent that the vast majority of the statutes on which appellants rely as the basis for their requested relief are dependent on the JIV and its land being subject to California state law. In order to be able to effectively address appellants' claims, the trial court would necessarily have to determine the status of the JIV and its lands. Thus, the JIV could suffer prejudice if the court were to conclude, in the JIV's absence, that it is not in fact a federally recognized tribe or that the land in question is not land held in trust for the tribe.

23

ii.     *The trial court did not abuse its discretion in determining that the action should not go forward without the JIV's participation*

"[U]nder subdivision (b) of section 389 that a court must decide whether a party is truly indispensable; if a party is found, under subdivision (a), to be necessary to the action but cannot be made a party, the court 'shall determine whether in equity and good conscience the action should proceed among the parties before it' or whether the action should be dismissed, 'the absent person being thus regarded as indispensable.' In making this determination the court should consider the four factors listed in the statute." (*Lungren*, *supra*, 56 Cal.App.4th at pp. 879-880.) The section 389 subdivision (b) factors are not arranged in a hierarchical order, and no factor is determinative or necessarily more important than another. (*County of San Joaquin v. State Water Resources Control Bd.* (1997) 54 Cal.App.4th 1144, 1149, 1153.)

The first factor to be considered is "to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties." (Code Civ. Proc., § 389, subd. (b), factor (1).) As the trial court determined, this factor weighs heavily in favor of the determination that the JIV is indispensable to this action and that the court should not go forward in the JIV's absence. We agree. As the trial court noted, "[a]t its core, this is a dispute about tribal lands." Any judgment rendered in favor of appellants on their claims would necessarily undermine the JIV's interests in the land that the JIV asserts is tribal land.

Appellants' current action against Caltrans appears to be simply their latest salvo in their ongoing efforts to subvert the interests of the JIV. Indeed, the briefing in this

24

court, alone, demonstrates that appellants seek to undermine the JIV at virtually every turn. Although appellants repeatedly assert that their claims are against Caltrans regarding soil that is now located on land belonging to the state, it is clear from the appellants' filings in this appeal, as well as from the arguments they raise, that this action is but yet another attempt to derail the JIV as part of the long-standing dispute between appellants and the leadership of the JIV that has led to litigation in a variety of forms for more than 20 years.[13] Appellants have attacked the JIV's status as a federally recognized tribe, they have alleged that the Secretary of the Interior was not authorized to take land

---

[13] In 2009, the Federal Claims Court explained that Rosales and Toggery had been engaged in litigation over the JIV and its land for approximately fifteen years at that point in time, and summarized the litigation in this way:

> "Plaintiffs have litigated or sought to litigate these same and related issues in no fewer than fourteen legal actions brought before tribal tribunals, administrative boards, and federal courts in California and the District of Columbia, all without success." (*Rosales v. United States* (Fed.Cl. 2009) 89 Fed.Cl. 565, 571, fn. omitted.)

In soundly rejecting the plaintiffs' amended complaints in the case before it, the Federal Claims Court went further, stating:

> " 'Despite vainly prosecuting myriad legal claims in every conceivable forum and fruitlessly propounding inventive and novel legal theories, plaintiffs have continually stared down the face of defeat, personifying Mason Cooley's aphorism, "if you at first don't succeed, try again, and then try something else." ' Plaintiffs' current attempt to defy their fate—an attempt this court strongly admonishes plaintiffs to make their last—miscarries again." (*Id*. at p. 572.)

Apparently the Federal Claims Court's admonishment did not sway appellants. Rather, they seem to have viewed the court's admonishment as merely another challenge, and they continue to get ever more creative in their attempt to undermine the leadership of the JIV.

into trust for the JIV in 1987, and their claims rest on their contention that the JIV's land is actually private land that is subject to state law. The claims also rest on appellants' contention that the soil in question contains the personal property of appellants or other individuals, as opposed to the soil and its contents being the property of the Tribe. Appellants' claims clearly implicate fundamental tribal interests, and a judgment in favor of appellants would clearly have the potential to severely prejudice the JIV.

The next consideration is whether protective provisions in the judgment can ameliorate or eradicate prejudice to the unnamed party or parties. (Code Civ. Proc., § 389, subd. (b), factor (2).) Given that appellants' contentions are contingent on their assertion that they have personal property rights in the alleged contents of the soil that are superior to the Tribe's rights to the soil and its contents, we remain unconvinced that the trial court could fashion a judgment in appellants' favor that could adequately ameliorate prejudice to the Tribe.

The third factor to be considered is whether a judgment entered in the absence of the JIV will be adequate (Code of Civ. Proc., § 389, subd. (b), factor (3)), and the fourth factor is whether the plaintiff or cross-complainant will have an adequate remedy if the action is dismissed for nonjoinder (*id.*, factor (4)). The trial court did not rely on these factors, and given the great weight the trial court accorded the first factor, and the court's implicit reliance on the fact that it would be unable to fashion a judgment that would minimize any prejudice to the JIV under the second factor, there is no reason to conclude that the trial court abused its discretion in determining that the JIV is an

26

indispensable party whose presence is absolutely necessary in this action.[14] Given that the JIV may not be joined as a result of its sovereign immunity, the trial court reasonably concluded that dismissal of the action was appropriate.

        c.    *Appellants' attempt to avoid the fact that the JIV is an indispensable party with sovereign immunity by amending the complaint to name the executive members of the tribe as defendants is inadequate, both because no amendment was effectuated, and because such an amendment would not serve to sufficiently address the JIV's interests*

Appellants claim that the former members of the JIV's executive council have been named as defendants in this action. Appellants further assert that they may sue these individuals pursuant to Supreme Court authority provided in *Michigan v. Bay Mills Indian Community* (2014) 134 S.Ct. 2024 (*Bay Mills*), and that these individuals' interests are sufficiently aligned with the JIV's tribal interests such that joining these individuals avoids any problem posed by the fact that the JIV is an indispensable party that cannot be joined in the action. There are a number of problems with appellants' position.

First, appellants are factually incorrect. The record demonstrates that although appellants filed a document in which they *attempted* to amend the complaint to name these individuals as defendants, the trial court did not grant leave to amend to name these individuals as defendants, and in fact, specifically refused to allow such an amendment. Further, although appellants suggest that refusing to allow an amendment to substitute in

---

14    We acknowledge that appellants might not have another adequate remedy; however, the absence of an adequate remedy for the appellants is not sufficient to overcome the JIV's interest in maintaining its sovereign immunity. (See *Rosales v. United States* (9th Cir. 2003) 73 Fed.Appx. 913, 915 ["While Appellants do not appear to have another adequate remedy, 'the tribe's interest in maintaining [its] sovereign immunity outweighs the plaintiffs' interest in litigating their claims.' "].)

27

named defendants for Doe defendants generally constitutes an abuse of discretion and assert in their reply brief that "it would have been a reversible abuse of discretion not to permit the Doe amendment to be filed," they appear to be contending on appeal that the amendment *was* properly effectuated. In relying on their contention that they properly effectuated the amendment to name these individuals, appellants fail to make a specific argument on appeal that the trial court abused its discretion in denying them leave to amend to name these defendants.[15] As a result, it is clear that the identified individuals are not defendants in this action, and appellants have not properly challenged the trial court's refusal to permit them to name these individuals.

Further, even if appellants had set forth a sufficient argument on appeal that the trial court abused its discretion in denying them leave to amend the complaint to name the individual executive council members, we would conclude that the court did not abuse its discretion in this regard because appellants are legally incorrect. Tribal officials acting within the scope of their authority are immune from lawsuits or court process in the absence of congressional abrogation or tribal waiver. (*Kiowa Tribe v. Manufacturing Tech* (1998) 523 U.S. 751, 754; *Great Western Casinos, Inc. v. Morongo Band of Mission Indians* (1999) 74 Cal.App.4th 1407, 1421.) As a result, the only way that these individuals could be named would be in their individual capacities, and *not* in their

---

[15] Rather than present an argument that the trial court abused its discretion in not permitting appellants to substitute the individual defendants in place of the Doe defendants, appellants instead simply assume that these individuals *are* named defendants, as if asserting it makes it so. Appellants even go so far as to include these individuals in the caption on their opening brief.

official capacities.  However, if named in their individual capacities, these individuals could represent only their own personal interests, and not the interests of the JIV.  The JIV's interests would therefore remain unaddressed in this action, and the JIV would thus remain an indispensable party.

Appellants rely on *Bay Mills*, *supra*, 134 S.Ct. 2024 (*Bay Mills*) in support of their contention that they can avoid the problem of tribal sovereign immunity by simply naming these individuals as defendants in this action.  In *Bay Mills*, the United States Supreme Court held that the State of Michigan was barred from bringing suit against a tribe for allegedly operating a casino on land located outside of the tribe's reservation.  Michigan sought to maintain the action against the tribe on the ground that the tribe's sovereign immunity had been partially abrogated by the Indian Gaming Regulatory Act (IGRA; 25 U.S.C. 2710).  The United States Supreme Court concluded that although IGRA would permit an action regarding the tribe's gaming activities on its reservation, IGRA does not permit the state to sue regarding conduct that is alleged to have occurred outside of the reservation.  (*Bay Mills*, *supra*, at p. 2032.)

In addressing Michigan's concerns that the tribe's sovereign immunity would effectively preclude the state from having any authority to prevent the tribe from conducting illegal gaming off of its tribal lands, the Court observed that Michigan retained a number of methods for addressing such conduct, noting that the state could deny a gaming license, bring a lawsuit against tribal officials and employees who engaged in illegal gaming activities, and/or bring criminal actions against those who maintain or frequent an unlawful gaming establishment.  (Bay Mills, *supra*, 134 S.Ct.

29

at pp. 2034-2035.)  Citing *Ex parte Young* (1908) 209 U.S. 123 and *Santa Clara Pueblo v. Martinez* (1978) 436 U.S. 49 (*Santa Clara Pueblo*)*,* the Court also noted that the tribe's sovereign immunity would not necessarily prevent a suit for injunctive relief against the individual tribal officials.  (*Bay Mills*, *supra*, at p. 2035.)

This language is dicta in *Bay Mills*, and it does not establish a new holding, but rather, merely summarizes the state of the law that was established by *Ex parte Young* in 1908 and extended in *Santa Clara Pueblo* in 1978.  To the extent that *Ex parte Young* and *Santa Clara Pueblo* would permit the naming of individual tribal officials in an action seeking prospective injunctive relief for unlawful conduct, this case does not present that situation.  Specifically, appellants have not sought and could not seek prospective injunctive relief against the individual officials, since the soil at issue has already been moved off of the land in question and deposited at its current, and presumably final, location at the site of the Caltrans Project.

d.     *No evidence was admitted to establish that the JIV contractually waived its sovereign immunity*

Appellants suggest that the JIV may be named as a party in this action because "CalTrans required the JIV to contractually waive any claim of sovereign immunity in the Application for the Encroachment Permit, as to the JIV's obligation to indemnify Caltrans for any damages to appellants caused by JIV's desecration of appellants' families' remains."

30

The document on which appellants rely is one of the documents as to which the trial court did not grant appellants' request for judicial notice. As a result, the document was not admitted as evidence in the trial court. Further, given that appellants have not challenged the trial court's decision to deny the request for judicial notice of this document (or the others as to which judicial notice was not taken), we have stricken that document from the Appellants' Appendix. Appellants thus may not rely on this document as evidence in support of their contention on appeal.

### e. *The JIV has not waived its sovereign immunity by filing an amicus curiae brief, either in the trial court or in this court*

Appellants also argue that the JIV has waived its sovereign immunity by "seeking relief from the trial court and filing declarations as to the merits of appellants' preliminary injunction motion." We disagree. The JIV filed its amicus briefing in order to *assert its sovereign immunity* and to stress to the courts that it is an indispensable party whose interests would be affected if the court were to take action on appellants' complaint against Caltrans. The JIV's conduct can in no way be construed as a waiver of its sovereign immunity.

In sum, the JIV is an indispensable party to this action, but because the JIV enjoys sovereign immunity, it cannot be joined as a party. The trial court therefore appropriately determined that the action should be dismissed pursuant to section 389.

31

## IV.

## DISPOSITION

The judgment is affirmed.  Costs are awarded to respondent.

AARON, J.

WE CONCUR:

McCONNELL, P. J.

McDONALD, J.